531 So.2d 129 (1988)
Joseph Anthony CICCARELLI, Petitioner,
v.
STATE of Florida, Respondent.
No. 70811.
Supreme Court of Florida.
September 8, 1988.
*130 Richard L. Jorandby, Public Defender and Louis G. Carres, Asst. Public Defender, Fifteenth Judicial Circuit, West Palm Beach, for petitioner.
Robert A. Butterworth, Atty. Gen. and Carolyn V. McCann, Asst. Atty. Gen., West Palm Beach, for respondent.
BARKETT, Justice.
This case is before us on the following question certified in Ciccarelli v. State, 508 So.2d 52, 53 (Fla. 4th DCA 1987):
Is it necessary, in evaluating an assertion of harmless error in a criminal appeal, that each appellate judge independently read the complete trial record?
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
To amplify the certified question, the district court candidly disclosed the procedure employed in deciding this case:
In determining that the error involved herein was harmless we have relied extensively upon the review of the evidence set out in the parties' briefs and our own internal review process by which the court's legal staff directly examines the trial court record to be certain that the court is presented with an accurate description of the evidence. Each judge on the panel has not independently read the record in its entirety.
Id. at 52.
Thus, the issue before us is whether the district court of appeal properly reviewed the case pursuant to the dictates of State v. DiGuilio, 491 So.2d 1129 (Fla. 1986), and Holland v. State, 503 So.2d 1250 (Fla. 1987).
We can best answer the question posed by the Fourth District by reiterating *131 and reaffirming the dictates of DiGuilio, which established the components of the harmless error test in Florida. Initially, we note that the state as the beneficiary of the error has the burden of proving
beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.
491 So.2d at 1135 (citation omitted). Thus, if there is error, it requires reversal unless the state can prove beyond a reasonable doubt that the error was harmless. We reject the state's contention, like that reported in Lee v. State, 508 So.2d 1300 (Fla. 1st DCA 1987), approved, 531 So.2d 133 (Fla. 1988), that it is the court's burden rather than that of the state:
The state offered no argument on harmless error in its brief, and at oral argument counsel insisted it was an obligation of the court to apply the harmless error test without argument or guidance from the state.
Id. at 1302. The district court in that case correctly noted that "the harmless error rule requires that the state demonstrate beyond a reasonable doubt that the error did not affect the jury verdict." Id. at 1303 (citation omitted, emphasis added).
Accordingly, if the state has not presented a prima facie case of harmlessness in its argument, the court need go no further.
If, however, the state has presented a prima facie case, the appellate court must evaluate the record to determine, not whether there was overwhelming evidence of guilt, but whether the result would have been the same absent the error:
[H]armless error analysis must not become a device whereby the appellate court substitutes itself for the jury, examines the permissible evidence, excludes the impermissible evidence, and determines that the evidence of guilt is sufficient or even overwhelming based on the permissible evidence. In a pertinent passage, Chief Justice Traynor points out:
Overwhelming evidence of guilt does not negate the fact that an error that constituted a substantial part of the prosecution's case may have played a substantial part in the jury's deliberation and thus contributed to the actual verdict reached, for the jury may have reached its verdict because of the error without considering other reasons untainted by error that would have supported the same result.
DiGuilio, 491 So.2d at 1136 (quoting People v. Ross, 67 Cal.2d 64, 60 Cal. Rptr. 254, 269, 429 P.2d 606, 621 (1968)).
In order to determine whether this test has been met, it is necessary that the court conduct
an examination of the entire record ... including a close examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict.
491 So.2d at 1135.
This Court recognized the burden involved in DiGuilio, and we ourselves performed that task despite its burdensomeness:[*]
The district court's reference to a sufficiency-of-the-evidence test suggests a misunderstanding of the harmless error test. Because we wish to make it clear that the harmless error test is to be rigorously applied, we examine the record ourselves rather than remanding. We conclude that the error was harmful and the conviction should be quashed.
Id. at 1137 (emphasis added).
The examination of a record for the purpose of evaluating harmless error necessarily *132 involves more than a resolution of contested facts. The function of an examination for this purpose is to
take account of what the error meant to [the jury], not singled out and standing alone, but in relation to all else that happened. And one must judge others' reactions not by his own, but with allowance for how others might react and not be regarded generally as acting without reason. This is the important difference, but one easy to ignore when the sense of guilt comes strongly from the record.
Kotteakos v. United States, 328 U.S. 750, 764, 66 S.Ct. 1239, 1247-1248, 90 L.Ed. 1557 (1946).
This requires more than a mere totaling of testimony, and, in most instances, more than a mere reading of a portion of the record in the abstract. It entails an evaluation of the impact of the erroneously admitted evidence in light of the overall strength of the case and the defenses asserted. Unlike the initial decision of whether error occurred, which in many instances can be made from a fragment of the record or the examination of the law alone, the effect of error on the verdict is a different inquiry. It must, in most cases, be evaluated through the examination of the entire trial transcript. The court must determine not if there is overwhelming evidence of guilt, but if it can be said beyond a reasonable doubt that the verdict could not have been affected by the error.
This is not to say that every case will require a reading of every word in a trial transcript. We can envision certain errors, such as improper leading questions or admission of totally irrelevant matters, that would not require such a demanding task. The decision of how much to read in order to apply the harmless error test "rigorously" and appropriately must be left to the conscience of each individual judge.
This is to say, however, that it is a responsibility that must be performed in the final analysis by each member of the panel of judges, not by the lawyers or the law clerks.
We recognize that appellate briefs are essential to focus the court's attention on the issues to be resolved. Similarly, the assistance of the court's legal staff has become an invaluable and essential tool in helping judges perform their tasks. Neither, however, suffices for the independent evaluation and judgment of the judge. Briefs, summaries and memoranda are a help, not a substitute. It is the judge who is qualified by experience and appointment who has the ultimate responsibility of the decision, and it cannot be delegated to law clerks, lawyers or even other members of the panel.
Recognizing that the district court did not have the benefit of these views, we remand so that the court can reconsider its decision in light of this opinion.
It is so ordered.
EHRLICH, C.J., and KOGAN, J., concur.
GRIMES, J., concurs specially with an opinion, in which OVERTON and McDONALD, JJ., concur.
McDONALD and SHAW, JJ., concur in result only.
GRIMES, Justice, specially concurring.
While the standard of review for harmless error is properly established by this Court, the manner by which each judge makes the determination of this issue must necessarily be decided by that judge. Each judge in the State of Florida takes an oath "to well and faithfully perform the duties" of his or her office. Art. II, § 5, Fla. Const. In order to fulfill that oath, a finding of harmless error cannot be made unless the judge is satisfied beyond a reasonable doubt that the error complained of did not contribute to the verdict or judgment. In some cases, it may be necessary for the judge to read the entire record, while in others it will suffice to read only a portion of the record. There are also cases in which the harmlessness of the error will be so apparent that any needed reference to the record may be delegated to the judge's legal staff. The point is that this is a *133 decision which in each case must be left to the conscience of each individual judge.
By having cited DiGuilio, it is clear that the court below understood the principles applicable to a determination of harmless error. In referring to the steps taken in reaching the conclusion that harmless error existed, the court stated that it was "confident that this review has been both competent and accurate." Except for the fact that the court certified the question, I would be content to accept this statement without remanding for further consideration.
OVERTON and McDONALD, JJ., concur.
NOTES
[*] We note Justice Stevens' complaint in his specially concurring opinion in United States v. Hasting, 461 U.S. 499, 517, 103 S.Ct. 1974, 1984-1985, 76 L.Ed.2d 96 (1983) that the task belonged to the court of appeals:

As a practical matter, it is impossible for any Member of this Court to make the kind of conscientious and detailed examination of the record that should precede a determination that there can be no reasonable doubt that the jury's deliberations as to each defendant were not affected by the alleged error. And it is an insult to the Court of Appeals to imply, as the Court does today, that it cannot be trusted with a task that would normally be conducted on remand.